IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

DIANA HERNANDEZ, individually and on behalf of all others similarly situated,

Plaintiff,

v.

DYSON, INC.

Defendant.

Case No. 1:26-cv-6898

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff Diana Hernandez ("Plaintiff"), individually and on behalf of all others similarly situated, brings this Class Action Complaint against Defendant Dyson Inc., ("Defendant" or "Dyson") and alleges, upon personal knowledge as to Plaintiff's own actions and to counsels' investigation, and upon information and belief as to all other matters, as follows:

**NATURE OF THE ACTION**

1.      This is a class action by United States citizens and customers of Defendant.

2.      For approximately one year, the federal government charged tariffs on certain products, including consumer goods, imported into the United States under the International Emergency Economic Powers Act ("IEEPA").

3.      Absorbing the Costs associated with IEEPA Tariffs created a substantial financial strain for businesses with international supply networks.

4.      Large number of businesses, including Dyson, responded to the high cost of IEEPA tariffs by passing those tariffs onto consumers in the form of price increases.

5.      On February 20, 2026, the Supreme Court of the United States held that these tariffs were not authorized by IEEPA and thus illegal.

6. Following the Supreme Court's decision, businesses sought refunds of the IEEPA tariffs they paid through litigation in the International Court of Trade. The U.S. Customs and Border Protection ("CBP") announced a process to streamline refunds to businesses and other entities that paid IEEPA tariffs, but imposed no legal requirement on businesses that passed through the IEEPA tariffs to refund the individuals who actually paid them.

7. In this case, Consumers that ultimately paid the IEEPA. Consequently, those consumers are entitled to a refund of the tariffs the Supreme Court ruled were illegal when charged.

8. While Dyson is able to recover refunds for the IEEPA tariffs it paid, it has made no legally-binding commitment to return IEEPA tariffs it passed through to the consumers who were forced to absorb the impact of the illegal IEEPA tariffs. This lawsuit seeks to reverse this unjust result.

**PARTIES**

9. Plaintiff Diana Hernandez is a resident of the state of California. Plaintiff purchased items from Dyson that was subject to an increased price that was directly tied to IEEPA tariffs that Dyson paid and passed through to her.

10. Defendant Dyson, Inc. is an Illinois corporation with its principal place of business at 1330 W Fulton Market Fl 5, Chicago, IL 60607.

**JURISDICTION AND VENUE**

11. This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332, because this is a class action wherein the amount in controversy exceeds the sum or value of $5,000,000.00, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one member of the class is a citizen of a state different from Defendant.

12. The Court has jurisdiction to enter declaratory relief under 28 U.S.C. § 2201 because an actual controversy exists between the parties regarding Defendant's obligation to return to the consumers who paid them the IEEPA duties and fees Defendant collected, as well as any IEEPA duty refunds Defendant recovers from the United States.

13. This Court has personal jurisdiction over Defendant because its principal place of business is in this District. Defendant has purposefully availed itself of the Illinois' laws, rights, and benefits.

14. Venue is proper under 28 U.S.C. § 1391 because a Defendant maintains a principal place of business in this District and a substantial part of the events and omissions giving rise to Plaintiff's claims occurred.

## FACTUAL ALLEGATIONS

### A. Dyson's Business

15. Dyson Inc., is a multinational technology company, renowned for its engineering-led approach to everyday household appliances. Founded by British inventor Sir James Dyson, the company is famous for inventing the world's first cyclonic bagless vacuum cleaner and has since expanded into hair care, air purification, and audio.

16. To maintain a competitive edge, Dyson maintains an international supply chain with factories located in Malaysia, Singapore, the Philippines, and China.

17. Imported goods account for most, if not virtually all, of Dyson's retail sales in the United States. Because Dyson imports most if not all of the goods it sells, the IEEPA tariffs directly increased Dyson's cost of importing products into the United States.

### B. IEEPA Tariffs

18.     In the beginning in February 2025, President Trump invoked the IEEPA to impose tariffs on imports from numerous foreign countries citing national emergencies related to trade and supply chain concerns. Those executive orders imposed sweeping tariffs on imports from key U.S. trading partners, including duties of approximately 25 percent on many imports from Canada and Mexico and additional tariffs on imports from China and 19 percent on many imports from Malaysia and the Philippines that were layered on top of existing duties, resulting in substantially higher effective tariff rates on goods from these countries.

19.     Under U.S. customs law, the importer of record is responsible for paying tariffs when goods enter the United States. Accordingly, importers of record, including major retailers like Dyson, were required to pay the IEEPA tariffs to U.S. CBP upon entry of covered products into the country.

20.     Numerous importers challenged the legality of the IEEPA tariffs, arguing that the President lacked statutory authority under the IEEPA to impose tariffs of that nature.

21.     On February 20, 2026, the Supreme Court of the United States held that the challenged tariff regime was unlawful and that IEEPA does not authorize the President to impose tariffs of the type challenged in that litigation. This ruling invalidated the tariff orders issued pursuant to that statute. *Learning Res., Inc. v. Trump*, 607 U.S. __ (2026).

22.     Rather than announce any prospective limitation on the imposition of IEEPA tariffs, the Supreme Court's decision declared that there was no legal basis for imposing the IEEPA tariffs. In other words, the IEEPA tariffs were unlawful from the moment they were imposed and thus unlawful when businesses like Dyson passed the tariff fees through to consumers.

23.     After the Learning Resources decision, CBP developed the Consolidated Administration and Processing of Entries (CAPE) to "streamline the submission and processing

of valid refund requests for duties imposed under the International Emergency Economic Powers Act (IEEPA)."[1] The CAPE process was launched on April 20, 2026, and provides a way for importers of record to recover IEEPA tariffs submitting a spreadsheet and supporting declaration.

24. News reports indicate that affected businesses have flocked to the CAPE process to obtain IEEPA tariff refunds. ABC News reported that "while the money will start flowing to businesses, consumers should not expect to see direct refunds."[2]

## C. IEEPA Tariffs are Borne by Consumers

25. Economists widely recognize that tariffs are largely borne by domestic consumers rather than foreign exporters or the importing firms that formally remit the duties. Businesses can and do pass through the tariff fees to the end purchaser - the consumer.

26. Economic studies examining recent U.S. tariff regimes consistently find that the cost of tariffs is passed through into higher prices paid by U.S. purchasers of imported goods. Surveys of U.S. businesses conducted by the Federal Reserve Bank of New York during the recent tariff period found that a large majority of firms facing tariff-related cost increases passed at least some portion of those costs through to their customers in the form of higher prices.

27. Facing increased costs resulting from the tariffs on its products, Dyson followed this same pattern.

## D. Dyson is in Line to Receive Refunds

28. Following the Supreme Court's decision in February 2026, importers that had paid IEEPA tariffs—including Dyson—became eligible to pursue refunds of those duties.

29. Dyson is eligible for tariff refunds corresponding to duties it paid during the Class Period. Those expected refunds are especially significant here because Dyson previously passed

---

[1] https://www.cbp.gov/trade/programs-administration/trade-remedies/ieepa-duty-refunds
[2] https://abcnews.com/Business/wave-tariff-refunds-hit-businesses-tomorrow/story?id=132854062

tariff-related cost increases through to consumers in the form of higher retail prices, meaning Dyson now seeks to recover from the government duties whose economic burden was borne, in whole or in part, by Plaintiffs and Class members.

30.     Dyson has already recouped tariff costs from consumers through higher prices and now stands in line to recover those same unlawful tariff payments from the federal government.

## PLAINTIFF'S ALLEGATIONS

31.     On or about December 20, 2025, Plaintiff purchased a Dyson Supersonic Natural Hair Dryer and a Dyson Special Edition Airwrap i.d. Multi-Styler.

32.     Plaintiff paid full price for both purchases, which included IEEPA tariff fees passed through to her by Dyson.

33.     Plaintiff has not been refunded the IEEPA tariff fees she has paid to Dyson.

## CLASS ACTION ALLEGATIONS

34.     Plaintiff brings this action on behalf of herself and as a class action for all others similarly situated, pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and/or 23(b)(3). Specifically, the Class is defined as follows:

**Nationwide Class:** All customers of Defendant who purchased goods through February 24, 2026, on which Defendant passed through illegal IEEPA tariffs (the "Class").

35.     This Nationwide Class shall be referred to herein as the "Class."

36.     Specifically excluded from the Class are Defendant, its officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, principals, servants, partners, joint venturers, or entities controlled by Defendant, and its heirs, successors, assigns, or other persons or entities related to or affiliated with Defendant and/or its officers and/or directors, the judge assigned to this action, and any member of the judge's immediate family.

37.     Plaintiff reserves the right to amend the Class definitions above if further investigation and/or discovery reveals that the Class should be expanded, narrowed, divided into subclasses, or otherwise modified in any way.

38.     This action may be certified as a class action because it satisfies the numerosity, commonality, typicality, adequacy, and superiority requirements therein.

39.     Numerosity: The Class is so numerous that joinder of all Class Members is impracticable. Although the precise number of such persons is unknown, and the facts are presently within the sole knowledge of Defendant, upon information and belief, Plaintiff estimates that the Class is comprised of thousands of Class Members, if not more. The Class is sufficiently numerous to warrant certification.

40.     Typicality of Claims: Plaintiff's claims are typical of those of other Class Members because Plaintiff, like the unnamed Class, purchased goods from Defendant subject to IEEPA tariff-related price increases. The harm suffered by Plaintiff is similar to that suffered by all other Class Members which was caused by the same misconduct by Defendant.

41.     Adequacy of Representation: Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has no interest antagonistic to, nor in conflict with, the Class. Plaintiff has retained competent counsel who are experienced in consumer and commercial class action litigation and who will prosecute this action vigorously.

42.     Superiority: A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Because the monetary damages suffered by individual Class Members are relatively small, the expense and burden of individual litigation make it impossible for individual Class Members to seek redress for the wrongful conduct asserted herein. If Class treatment of these claims is not available, Defendant will likely continue its wrongful

conduct, will unjustly retain improperly obtained revenues, or will otherwise escape liability for its wrongdoing as asserted herein.

43.     Predominant Common Questions: The claims of all Class Members present common questions of law or fact, which predominate over any questions affecting only individual Class Members, including, but not limited to:

a. Whether Defendant engaged in the uniform conduct, practices, representations, omissions, or policies alleged herein;

b. Whether Defendant's conduct was unlawful, or otherwise actionable under applicable federal and state law;

c. Whether Defendant breached duties owed to Plaintiff and Class Members;

d. Whether Defendant passed tariff costs onto its customers by paying duties at customs and then increasing the retail prices on goods sold;

e. Whether Defendant's conduct caused injury to Plaintiff and Class Members;

f. Whether Defendant was unjustly enriched; and

g. The nature of relief, including damages and equitable relief, to which Plaintiff and Class Members are entitled.

44.     These common questions are capable of class-wide resolution because they arise from Defendant's uniform conduct and do not depend on individualized proof. The determination of these issues will resolve central aspects of Defendant's liability in a single adjudication and will materially advance the resolution of this litigation.

45.     Plaintiff knows of no obstacle that would prevent this litigation from being maintained as a class action.

46.     The prosecution of separate actions by individual members of the Class would run the risk of inconsistent or varying adjudications and establish incompatible standards of conduct for Defendant. Prosecution as a class action will eliminate the possibility of repetitious and inefficient litigation.

## CAUSES OF ACTION

### COUNT I

### UNJUST ENRICHMENT

47. Plaintiff incorporates by reference and re-alleges each and every allegation set forth in the foregoing paragraphs as though fully set forth herein.

48. Plaintiff and Class Members conferred a direct financial benefit upon Defendant by paying tariff-related charges in the form of increased prices on goods.

49. Defendant knowingly received and accepted these benefits.

50. The tariff-related price increases imposed and collected by the Defendant were unlawful and unauthorized.

51. Defendant collected and retained funds to which it was not legally entitled.

52. Defendant collected and retained these funds to which it was not entitled, despite knowing or having reason to know that the charges were unlawful, invalid or subject to refund.

53. It would be inequitable and unjust for Defendant to retain these funds.

54. Plaintiff and Class Members suffered economic injury as a result of Defendant's unjust retention of these funds.

55. Defendant was unjustly enriched at the expense of Plaintiff and Class Members.

56. Equity and good conscience require that Defendant disgorge all unlawfully obtained funds and make restitution to Plaintiff and Class members.

### COUNT II

### MONEY HAD AND RECEIVED

57. Plaintiff incorporates by reference and re-alleges each and every allegation set forth in the foregoing paragraphs as though fully set forth herein.

58.     Plaintiff and Class Members conferred a direct financial benefit on the the Defendant by paying tariff-related charges in the form of increased prices on goods.

59.     On February 20, 2026, the Supreme Court of the United States held that IEEPA does not authorize the President to impose tariffs, and that tariffs were unlawful and imposed without statutory authority. *Learning Resources, Inc. v. Trump*, 607 U.S. ___ (2026).

60.     Despite the IEEPA tariffs being declared illegal, Defendant has not established a refund process for Plaintiff and Class Members.

61.     It would offend the principles of equity and good conscience if Defendant is allowed to retain the tariff related money it received from Plaintiff and Class Members.

62.     Under the circumstances, Defendant is not entitled to retain the money to which Plaintiff and Class Members assert a claim. Accordingly, Plaintiff and Class Members seek return of the money paid as damages, in an amount to be determined at trial, in addition to attorney's fees, costs, and all other relief the Court deems just and proper.

## COUNT III

## DECLARATORY JUDGMENT

63.     Plaintiff incorporates by reference and re-alleges each and every allegation set forth in the foregoing paragraphs as though fully set forth herein.

64.     In, or around, April 2025, U.S. Customs and Border Protection debuted a tariff refund claims portal where Importers of Record, like Defendant, can submit a declaration for the tariffs they paid under the IEEPA and receive a consolidated refund amount.

65.     Defendant has filed, or will file, a claim alleging it has suffered injury from having to pay IEEPA duties to the United States and requesting a full refund of what it paid for IEEPA

tariffs.  However, Defendant passed the cost of the IEEPA tariffs onto consumers like Plaintiff and Class Members.

66.     Despite the IEEPA tariffs being declared illegal, Defendant has failed to establish a refund process for Plaintiff and Class Members.

67.     As a direct and proximate result of the Defendant's conduct, Plaintiff and Class Members suffered damages.

68.     A substantial controversy exists between the parties, with adverse legal interests and sufficient immediacy to warrant a declaratory judgment.

69.     Under the Declaratory Judgment Act, this Court is authorized to enter a judgment declaring parties' rights and grant further relief as necessary.

70.     Accordingly, Plaintiff and Class Members are entitled to a declaration that any contract, agreement or other arrangement that permitted Defendant to collect funds from Plaintiff and Class Members for IEEPA tariff related charges is rescinded and void *ab initio*.

71.     Plaintiff and Class Members are also entitled to a declaration that either: (i) any refund Defendant obtains from the U.S. government/ U.S. Customs and Border Protection for IEEPA tariffs must be returned to Plaintiff and Class Members; or (ii) any amount that Defendant charged to and collected from Plaintiff and Class Members for IEEPA tariffs and related fees must be returned to Plaintiff and Class Members.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant as follows:

(a)     For an order determining that this action is properly brought as a class action and certifying Plaintiff as representative of the Class and their counsel as Class Counsel;

(b) For an order declaring that Defendant's conduct violates the causes of action referenced herein;

(c) For an order declaring that Defendant is obligated to reimburse Plaintiff and Class Members for any and all sums paid in connection with unlawful tariffs;

(d) For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

(e) For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

(f) For pre-judgment interest on all amounts awarded;

(g) For an order of restitution and all other forms of equitable monetary relief;

(h) For injunctive relief as pleaded or as the Court may deem proper;

(i) For an order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses and costs of suit; and

(j) Such other and further relief as the Court deems necessary and appropriate.

## **JURY TRIAL DEMANDED**

Plaintiff demands a trial by jury of all claims in this Class Action Complaint so triable.

Dated: June 11, 2026.

Respectfully Submitted,

*/s/ Paul J. Doolittle*
Paul J. Doolittle, Esq.
**POULIN | WILLEY| ANASTOPOULO, LLC**
32 Ann Street
Charleston, SC 29403
Tel: 803-222-2222
Fax: 843-494-5536
paul.doolittle@poulinwilley.com
cmad@poulinwilley.com

*Attorneys for Plaintiff and Proposed Class*