**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **DIANA HERNANDEZ** and AMY **HUNTER**, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>**DYSON, INC.**, and **DYSON DIRECT, INC**.<br><br>Defendants. | **Case No. 26-cv-6898 (Consolidated Docket)**<br>**Former Case No. 26-cv-6921 (Closed Docket)**<br><br>**CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

## CONSOLIDATED FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiffs Diana Hernandez and Amy Hunter ("Plaintiffs") bring this Class Action Complaint against Defendants Dyson, Inc., and Dyson Direct, Inc. ("Defendants" or "Dyson") as individuals and on behalf of all others similarly situated, and alleges, upon personal knowledge as to Plaintiff's own actions and to counsels' investigation, and upon information and belief as to all other matters, as follows:

## INTRODUCTION

1. This class action arises from Dyson's retention of an unjustified windfall profit created by unlawful tariffs imposed by the federal government of the United States under the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. § 1701.

2. Beginning in roughly February 2025, the United States government-imposed tariffs later found to be illegal on imports from numerous countries.

3. These tariffs increased the cost of goods imported into the United States.

4. Absorbing the Costs associated with IEEPA Tariffs created a substantial financial strain for businesses with international supply networks.

5. Many U.S. companies – including Dyson – responded to these illegal tariffs by increasing their prices, passing the cost of the illegal tariffs on to consumers like Plaintiffs.

6. American consumers paid higher retail prices imposed by retailers like the Defendants for consumer goods after the tariffs were imposed.

7. The Supreme Court eventually held that these tariffs were illegal. *Learning Resources, Inc. v. Trump*, 607 U.S. 229; 146 S.Ct. 628 (2026).

8. Importers and retailers like the Defendants became entitled to refunds of the duties they had previously paid to the U.S. Customs and Border Protection ("CBP").

9. Following the Supreme Court's decision, businesses sought refunds of the IEEPA tariffs they paid through litigation in the International Court of Trade. CBP announced a process to streamline refunds to businesses and other entities that paid IEEPA tariffs but imposed no legal requirement on businesses that passed through the IEEPA tariffs to refund the individuals who actually paid them.

10. Dyson collected the costs of the tariffs by raising prices on consumers.

11. Dyson retained those costs.

12. Dyson has sought refunds of those same tariff payments from the federal government.

13. If unchecked, Dyson will reap those tariff payments twice – once in the form of pass-through costs imposed on consumers like Plaintiffs, and then again from the federal government through its tariff refund program, including interest.

14. That result is unjust.

15. Plaintiffs bring this action on behalf of thousands of consumers who purchased goods from Dyson who paid inflated prices reflecting Dyson's increased prices based on Dyson's pass-through of the tariffs.

16. Consumers like Plaintiffs ultimately paid for IEEPA costs.

17. Companies like Dyson did not.

18. Plaintiffs seek restitution of the tariff overcharges, together with declaratory and monetary relief.

**PARTIES, JURISDICTION & VENUE**

19. Plaintiff Diana Hernandez is a resident of the state of California. Plaintiff Hernandez purchased items from Dyson that were subject to an increased price that was directly tied to IEEPA tariffs that Dyson paid and passed through to her. On or about December 20, 2025, Plaintiff purchased a Dyson Supersonic Natural Hair Dryer and a Dyson Special Edition Airwrap i.d. Multi-Styler. She paid higher prices as a result of the tariffs. Plaintiff paid prices for goods that were increased by Dyson to account for tariffs imposed on imported products. Plaintiff would not have paid those higher prices absent the unlawful tariffs and Dyson's pass-through of those tariffs to consumers.

20. Plaintiff Amy Hunter is a resident citizen of Columbus, Ohio. During the Class Period, Plaintiff Hunter purchased goods from a retailer selling Dyson products that were imported from countries subject to the IEEPA tariffs. Plaintiff paid retail prices for these goods that were increased by Dyson to account for tariffs imposed on imported products. Plaintiff would not have paid those higher prices absent the unlawful tariffs and Dyson's pass-through of those tariffs to consumers.

21. Defendant Dyson, Inc. is a corporation registered in Illinois with a registered agent of Registered Agents, Inc., 2501 Chatham Road, Suite R, Springfield, IL 62704.

22. Defendant Dyson Direct, Inc. is a corporation registered in Illinois with a registered agent of Registered Agents, Inc., 2501 Chatham Road, Suite R, Springfield, IL 62704. Dyson Direct represents on its website that Dyson Direct is the trading company and a primary point of contact for the company in the United States.[1]

23. This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332, because this is a class action wherein the amount in controversy exceeds the sum or value of $5,000,000.00, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one member of the class is a citizen of a state different from each Defendant.

24. This Court has personal jurisdiction over Defendants because its principal place of business is in this District. Defendants have purposefully availed themselves self of the Illinois' laws, rights, and benefits.

25. Venue is proper under 28 U.S.C. § 1391 because Defendants' principal place of business is in this District.

26. The Court has jurisdiction to enter declaratory relief under 28 U.S.C. § 2201 because an actual controversy exists between the parties regarding Defendants' obligation to return to the consumers who paid them the IEEPA duties and fees Defendants collected, as well as any IEEPA duty refunds Defendants recovers from the United States.

[1] https://www.dyson.com/inside-dyson/terms/company-information

## FACTUAL ALLEGATIONS

**A. Dyson's Business**

27. Dyson is a multinational technology company that manufactures and sells household appliances, including vacuums, hand dryers, lights, and other home and commercial goods.

28. Founded by British inventor Sir James Dyson, the company is famous for inventing the world's first cyclonic bagless vacuum cleaner and has since expanded into hair care, air purification, and audio.

29. Many of Dyson's products are manufactured outside the United States.

30. To maintain a competitive edge, Dyson maintains an international supply chain with factories located in Malaysia, Singapore, the Philippines, and China.

31. Imported goods account for most, if not virtually all, of Dyson's retail sales in the United States. Because Dyson imports most if not all of the goods it sells, the IEEPA tariffs directly increased Dyson's cost of importing products into the United States.

**B. IEEPA Tariffs**

32. In the beginning of February 2025, President Trump invoked the IEEPA to impose tariffs on imports from numerous foreign countries citing national emergencies related to trade and supply chain concerns. Those executive orders imposed sweeping tariffs on imports from key U.S. trading partners, including duties of approximately 25 percent on many imports from Canada and Mexico and additional tariffs on imports from China and 19 percent on many imports from Malaysia and the Philippines that were layered on top of existing duties, resulting in substantially higher effective tariff rates on goods from these countries.

33. Under U.S. customs law, the importer of record is responsible for paying tariffs when goods enter the United States. Accordingly, importers of record, including major retailers like Dyson, were required to pay the IEEPA tariffs to U.S. CBP upon entry of covered products into the country.

34. Numerous importers challenged the legality of the IEEPA tariffs, arguing that the President lacked statutory authority under the IEEPA to impose tariffs of that nature.

35. The importer of record is required under U.S. law to pay tariffs when goods enter this country.

36. On February 20, 2026, the Supreme Court of the United States held that IEEPA does not authorize the President to impose tariffs and that such tariffs were unlawful and imposed without statutory authority. *Learning Resources, Inc. v. Trump*, 607 U.S. 229; 146 S.Ct. 628 (2026).

37. Rather than announce any prospective limitation on the imposition of IEEPA tariffs, the Supreme Court's decision declared that there was no legal basis for imposing the IEEPA tariffs. In other words, the IEEPA tariffs were unlawful from the moment they were imposed and thus unlawful when businesses like Dyson passed the tariff fees through to consumers.

38. After the Learning Resources decision, CBP developed the Consolidated Administration and Processing of Entries (CAPE) to "streamline the submission and processing of valid refund requests for duties imposed under the International Emergency Economic Powers Act (IEEPA)."[2] The CAPE process was launched on April 20, 2026, and provides a way for importers of record to recover IEEPA tariffs submitting a spreadsheet and supporting declaration.

[2] https://www.cbp.gov/trade/programs-administration/trade-remedies/ieepa-duty-refunds

39. News reports indicate that affected businesses have flocked to the CAPE process to obtain IEEPA tariff refunds. ABC News reported that "while the money will start flowing to businesses, consumers should not expect to see direct refunds."[3]

40. As a result of that decision, the tariffs Defendants relied upon to impose charges on Plaintiffs and Class members were unlawful, invalid, and void.

41. CBP has not imposed any legal requirement on businesses that paid IEEPA tariffs to refund the money to consumers who may have paid higher prices for those goods.

**C. IEEPA Tariffs Are Borne by Consumers**

42. Economists widely recognize that tariffs are largely borne by domestic consumers rather than foreign exporters or the importing firms that formally remit the duties. Businesses can and do pass through the tariff fees to the end purchaser - the consumer.

43. Economic studies examining recent U.S. tariff regimes consistently find that the cost of tariffs is passed through into higher prices paid by U.S. purchasers of imported goods. Surveys of U.S. businesses conducted by the Federal Reserve Bank of New York during the recent tariff period found that a large majority of firms facing tariff-related cost increases passed at least some portion of those costs through to their customers in the form of higher prices.

44. Facing increased costs resulting from the tariffs on its products, Dyson followed this same pattern.

45. The Dallas Federal Reserve concluded in May 2026 that the cost of goods with the greatest tariff exposure rose and inflated consumer prices during the tariff period.[4]

46. Another study concluded that consumer prices had risen during the tariff period.[5]

---

[3] https://abcnews.com/Business/wave-tariff-refunds-hit-businesses-tomorrow/story?id=132854062
[4] https://www.dallasfed.org/research/economics/2026/0505-mau
[5] https://budgetlab.yale.edu/research/tracking-economic-effects-tariffs

**D. Dyson & The Tariffs**

47. President Trump's invocation of IEEPA tariffs increased Dyson's cost of importing goods into the United States.

48. Dyson was required to pay tariffs when its goods entered the United States.

49. During the period the tariffs were effective, Dyson increased its prices on consumers.

50. Media reports during the tariff period reflect that Dyson was increasing the prices due to the tariffs.[6]

51. Dyson made pricing decisions in response to the tariffs.

52. Dyson passed on the costs of the tariffs to consumers through higher prices, at least in part.

53. Plaintiffs and class members paid tariff-inflated prices to Dyson during the Class Period.

54. Dyson stands to benefit enormously if the tariff refunds are paid.

55. Retailers, including Dyson, are now seeking refunds from the federal government.[7]

56. Dyson passed tariff-related costs through to consumers in the form of higher prices.

57. Dyson stands to recover from the government costs whose economic burden was borne, in whole or in part, by Plaintiffs and Class Members.

58. Dyson is eligible for tariff refunds corresponding to duties it paid during the Class Period. Those expected refunds are especially significant here because Dyson previously passed tariff-related cost increases through to consumers in the form of higher retail prices, meaning

---

[6] https://finance.yahoo.com/economy/policy/articles/dyson-suffers-440m-sales-hit-170237181.html; https://popular.info/p/consumers-paid-for-trumps-illegal; https://pricetimeline.com/news/121.

[7] https://www.businessoffashion.com/news/beauty/loreal-sol-de-janeiro-and-dyson-among-firms-suing-for-trump-tariff-refunds/; https://cosmeticsbusiness.com/lor%C3%A9al-sol-de-janeiro-and-dyson-sue-tariff-refunds.

Dyson now seeks to recover from the government duties whose economic burden was borne, in whole or in part, by Plaintiffs and Class members.

59. Dyson has already recouped tariff costs from consumers through higher prices and now stands in line to recover those same unlawful tariff payments from the federal government.

60. Dyson stands to receive a windfall – it recouped tariff costs from consumers and now stands to recover those same costs from the government.

61. Defendants were unjustly enriched by collecting and retaining money to which it was not legally entitled.

62. Plaintiffs and Class members suffered economic injury as a direct result of Defendants' conduct, including payment of unlawful tariff-related charges and associated fees.

63. Defendants' conduct was uniform and systematic, affecting thousands of customers nationwide, and was carried out pursuant to standardized policies, practices, and contractual terms.

64. Plaintiffs bring this action on behalf of herself and all similarly situated persons to recover damages, restitution, disgorgement, and equitable relief arising from Defendants' unlawful conduct.

65. Absent relief from this Court, Defendants will continue to retain funds obtained through unlawful charges.

66. Dyson has not publicly committed to returning anything to consumers.

## CLASS ACTION ALLEGATIONS

67. Plaintiffs bring this action on behalf of themselves and as a class action for all others similarly situated, pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and/or 23(b)(3). Specifically, the class is defined as follows:

68. **Nationwide Class**: All customers who purchased goods from Dyson or a retailer selling Dyson products during the period in which Dyson's prices were inflated at least in part due to the tariffs (the "Class").

69. This Nationwide Class shall be referred to herein as the "Class."

70. Plaintiffs reserve the right to amend the Class definitions if further investigation and discovery indicate that the Class definitions should be narrowed, expanded, or otherwise modified.

71. Excluded from the Class is Defendant, its parents, subsidiaries, affiliates, officers and directors, and judicial officers and their immediate family members and associated court staff assigned to this case.

72. The particular members of the Class are capable of being described without difficult managerial or administrative problems. The members of the putative classes are also readily identifiable from the information and records in the possession or control of Defendants or its affiliates and agents and from major retail sellers.

73. Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

74. The proposed Class is so numerous that the joinder of all members is impracticable.

75. This action has been brought and may be properly maintained on behalf of the Class proposed herein under Federal Rule of Civil Procedure 23.

76. **Numerosity: Fed. R. Civ. P. 23(a)(1)** – Upon information and belief, the Class is so numerous that the joinder of all members is impracticable. While the exact number and

identities of individual members of the Class are unknown currently, such information is in the sole possession of Defendants and obtainable by Plaintiffs only through the discovery process.

77. **Typicality: Fed. R. Civ. P. 23(a)(3)** – Plaintiffs' claims are typical of the claims of the members of the Class, because, inter alia, all Class Members have been injured through the uniform misconduct described above. Moreover, Plaintiffs' claims are typical of the Class Members' claims because Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all members of the Class. In addition, Plaintiffs are entitled to relief under the same causes of action and upon the same facts as the other members of the proposed Class and Sub-class.

78. **Adequacy: Fed. R. Civ. P. 23(a)(4)** – Plaintiffs will fairly and adequately protect the interest of the members of the Class. Plaintiffs and the members of the Class were all assessed pass-through tariffs in the form of higher prices on retail products.

79. Plaintiffs will fairly and adequately represent and protect the interest of the Class and have retained competent counsel experienced in complex litigation and class action litigation. Plaintiffs have no antagonistic interest to those of the Class, and Defendants have no defenses unique to Plaintiffs.

80. **Predominance and Superiority: Fed. R. Civ. P. 23(b)(3)** – A class action is superior to all other available means for the fair and efficient adjudication of claims of Plaintiffs and Class Members. There are questions of law and fact common to all Class Members that predominate over questions affecting only individual Class Members. The damages or other financial detriment suffered by individual Class is relatively small compared to the burden and expense that would be incurred by individual litigation of their claims against Defendant. It would be virtually impossible for a member of the Class, on an individual basis, to obtain

effective redress for the wrongs committed against him or her. Further, even if the Class Members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. On the other hand, the class action device provides the benefits of adjudication of these issues in a single proceeding, economics of scale, and comprehensive supervision by a single court, and presents no management difficulties under the circumstances here.

81. Plaintiffs seek monetary damages, including compensatory damages on behalf of the Class, and other equitable relief on grounds generally applicable to the entire Class, to enjoin and prevent Defendants from engaging in the acts described. Unless a Class is certified, Defendants will be allowed to profit from its unfair and unlawful practices, while Plaintiffs and the members of the Class will have suffered damages. Unless a Class-wide injunction is issued, Defendants may continue to benefit from these alleged violations, and the members of the Class may continue to be unfairly treated making final injunctive relief appropriate with respect to the Class as a whole.

82. **Common Questions of Fact and Law: Fed. R. Civ. P. 23(b)(4)** – This action involves questions of law and fact common to the Classes. The common legal and factual questions include, but are not limited to, the following:

a. Whether Defendants engaged in the uniform conduct, practices, representations, omissions, or policies alleged herein;

b. Whether Defendants' conduct was unlawful, unfair, deceptive, misleading, or otherwise actionable under applicable federal and state law;

c. Whether Defendants breached duties owed to Plaintiffs and Class Members;

d. Whether Dyson paid tariffs imposed under IEEPA on imported goods during the class period;

e. Whether Dyson increased retail prices on goods sold to consumers in response to the tariffs;

f. Whether Dyson sought or will seek refunds of those tariff costs it paid to the federal government;

g. Whether Defendants' conduct caused injury to Plaintiffs and Class Members;

h. Whether Defendants were unjustly enriched as a result of the conduct alleged herein;

i. Whether Defendants are liable to Plaintiffs and Class Members for damages, restitution, disgorgement, or other equitable relief.

83. These common questions are capable of class wide resolution because they arise from Defendants' uniform conduct and do not depend on individualized proof. The determination of these issues will resolve central aspects of Defendants' liability in a single adjudication and will materially advance the resolution of this litigation.

## CAUSES OF ACTION

### COUNT I
### UNJUST ENRICHMENT / RESTITUTION

84. Plaintiffs incorporate all previous paragraphs as if fully set forth herein.

85. Plaintiffs and Class members conferred a direct financial benefit upon Defendants by paying increased retail prices imposed by Defendant.

86. Defendants knowingly received and accepted these benefits.

87. The tariff-related price increases imposed and collected by the Defendants were unlawful and unauthorized.

88. Defendants collected and retained funds to which it was not legally entitled.

89. Defendants collected and retained these funds to which it was not entitled, despite knowing or having reason to know that the charges were unlawful, invalid or subject to refund.

90. Under principles of equity and good conscience, Defendants should not be permitted to retain the amount of the price increases obtained from Plaintiffs and members of the Class, which Defendants unjustly obtained as a result of its price increases on goods subject to unlawful tariffs.

91. Defendants retained profits generated from sales of products subject to tariff-related price increases and should not be permitted to retain those ill-gotten profits when it is seeking a refund of the duties it paid.

92. It would be inequitable and unjust for Defendants to retain these funds.

93. Plaintiffs and Class members suffered economic injury as a result of Defendants' unjust retention of these funds.

94. Defendants were unjustly enriched at the expense of Plaintiffs and Class members.

95. Equity and good conscience require that Defendants disgorge all unlawfully obtained funds and make restitution to Plaintiffs and Class members.

## COUNT II
## MONEY HAD AND RECEIVED

96. Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

97. Defendants received monies from Plaintiffs and Class members in the form of tariff pass-through surcharges.

98. The Supreme Court has determined that the tariffs were unlawful.

99. The money belonged to Plaintiffs and the Class Members.

100. Defendants have not returned the money.

101. Plaintiffs and Class Members conferred a direct financial benefit on the Defendants by paying tariff-related charges in the form of increased prices on goods.

102. On February 20, 2026, the Supreme Court of the United States held that IEEPA does not authorize the President to impose tariffs, and that tariffs were unlawful and imposed without statutory authority. *Learning Resources, Inc. v. Trump*, 607 U.S. 229; 146 S.Ct. 628 (2026).

103. Despite the IEEPA tariffs being declared illegal, Defendants have not established a refund process for Plaintiffs and Class Members.

104. It would offend equity and good conscience if Defendants are permitted to retain the tariff pass-through surcharges.

105. Plaintiffs seek all remedies available under the law, including, if available, actual damages, nominal damages, compensatory damages, punitive damages, and other remedies available.

## COUNT III
## DECLARATORY JUDGMENT

106. Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

107. In, or around, April 2025, U.S. Customs and Border Protection debuted a tariff refund claims portal where Importers of Record, like Defendant, can submit a declaration for the tariffs they paid under the IEEPA and receive a consolidated refund amount.

108. Defendants have filed, or will file, a claim alleging it has suffered injury from having to pay IEEPA duties to the United States and requesting a full refund of what it paid for IEEPA tariffs. However, Defendants passed the cost of the IEEPA tariffs onto consumers like Plaintiffs and Class Members.

109. Despite the IEEPA tariffs being declared illegal, Defendants have failed to establish a refund process for Plaintiffs and Class Members.

110. As a direct and proximate result of the Defendants' conduct, Plaintiffs and Class Members suffered damages.

111. An actual controversy exists between Plaintiffs and Defendants regarding the rights and obligations of the parties with respect to the IEEPA tariffs collected by Defendants from Plaintiffs and Class Members. This controversy is not hypothetical or abstract.

112. Plaintiffs seek a Declaratory Judgment pursuant to 28 U.S.C. § 2201 that:

a. Defendants' conduct was uniform in increasing prices at least in part due to IEEPA tariffs.

b. Plaintiffs rightfully own the tariff-related surcharges imposed by Defendants in the form of higher prices.

c. Plaintiffs suffered an injury by having been required to pay Defendants a tariff surcharge.

d. Any contract, agreement or other arrangement that permitted Defendants to collect funds from Plaintiff and Class Members for IEEPA tariff related charges is rescinded and void *ab initio*.

113. This Court can exercise its equitable power to enter a declaratory judgment that retention of the tariff surcharges paid by Plaintiffs but refunded to Defendants is unlawful for any of the above reasons.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the other Members of the Class alleged herein, respectfully request that the Court enter judgment in their favor and against the Defendants as follows:

A. For an order certifying the Class and naming Plaintiffs as the representatives for the Class and Plaintiffs' attorneys as Class Counsel;

B. For an order declaring that Defendants' conduct violates the causes of action referenced herein;

C. For an order finding in favor of Plaintiffs and the Class on all counts asserted herein;

D. For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

E. For prejudgment interest on all amounts awarded;

F. For an order of restitution and all other forms of equitable monetary relief;

G. For injunctive relief as pleaded or as the Court may deem proper;

H. For an order awarding Plaintiffs and the Class their reasonable attorneys' fees and expenses and costs of suit; and

I. For an order providing for all other such equitable relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of all claims in this Complaint and of all issues in this action so triable as of right.

Dated: September 11, 2026.

Respectfully Submitted,

*/s/ Corey Kraushaar*
Corey Kraushaar

**STRANCH, JENNINGS & GARVEY**
701 Market Street, Suite 1510
St. Louis, MO 63101
Tel: (314) 390-6750
ckraushaar@stranchlaw.com

J. Gerard Stranch, IV
Grayson Wells
Michael Tackeff
**STRANCH, JENNINGS & GARVEY, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, Tennessee 37203
Telephone: (615) 254-8801
gstranch@stranchlaw.com
gwells@stranchlaw.com
mtackeff@stranchlaw.com

***Attorneys for Plaintiff Hunter & Proposed Class***

/s/ Paul J. Doolittle
Paul J. Doolittle, Esq.
**POULIN | WILLEY | ANASTOPOULO, LLC**
32 Ann Street
Charleston, SC 29403
Tel: 803-222-2222
Fax: 843-494-5536
paul.doolittle@poulinwilley.com
cmad@poulinwilley.com

***Attorney for Plaintiffs Hernandez & Proposed Class***