**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| DIANA HERNANDEZ and AMY HUNTER, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>DYSON, INC. and DYSON DIRECT, INC.,<br><br>Defendants. | Case No.: 1:26-cv-6898<br><br>Hon. Lindsay C. Jenkins |

**DYSON, INC. AND DYSON DIRECT, INC.'S MOTION TO DISMISS THE CONSOLIDATED SECOND AMENDED CLASS ACTION COMPLAINT PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1) AND 12(b)(6) AND MOTION TO STRIKE PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(f)**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ....................1

BACKGROUND ....................3

I. Dyson Pays IEEPA Tariffs to the U.S. Government ....................3

II. Dyson Allegedly Raises the Prices of Categories of Products Due to IEEPA Tariffs ....................3

III. Plaintiffs Voluntarily Purchase Dyson Products from Third-Party Retailers ....................4

IV. The U.S. Supreme Court Invalidates IEEPA Tariffs, Entitling Importers But Not Consumers to Refunds ....................4

ARGUMENT ....................5

I. The Complaint Should Be Dismissed Pursuant to Rule 12(b)(1) ....................5

A. Plaintiffs Lack Standing Because They Fail to Allege an "Injury in Fact" ....................5

B. Plaintiffs Lack Standing Because Their Injuries Are Not Traceable to Dyson ....................7

II. Plaintiffs' Claims Should Be Dismissed Pursuant to Rule 12(b)(6) ....................8

A. Plaintiffs Fail to Plausibly Allege Their Key Claim: That Dyson Raised the Prices Paid by Plaintiffs Due to IEEPA Tariffs ....................10

B. Plaintiffs Fail to Plausibly Allege That Dyson Received a Benefit From Plaintiffs ....................12

C. Plaintiffs Fail to Plausibly Allege Inequity to Their Detriment ....................14

D. A Claim in Quasi-Contract Cannot Be Maintained Where a Contract Governs the Alleged Unlawful Transaction ....................16

E. Plaintiffs Fail to Plausibly Allege a Justiciable Controversy ....................16

III. In the Alternative, the Court Should Strike Plaintiffs' Class Allegations Pursuant to Rule 12(f) ....................19

CONCLUSION ....................20

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Int'l Paper Co. v. Androscoggin Energy LLC*, No. 00 C 6215,
2003 WL 21468623 (N.D. Ill. June 20, 2003) ..................................................................... 17

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ............................................................................................................. 8

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ............................................................................................................. 9

*Blitz v. Monsanto Co.*,
317 F. Supp. 3d 1042 (W.D. Wis. 2018) ............................................................................ 14

*Bueker v. Madison Cnty.*,
2016 IL App (5th) 150282, 61 N.E.3d 237 .......................................................................... 9

*Buonomo v. Optimum Outcomes, Inc.*,
301 F.R.D. 292 (N.D. Ill. 2014) .......................................................................................... 18

*Clifton v. Johnson*,
2016 WL 7231124 (Ohio App. 4 Dist. Dec. 6, 2016) ............................................................ 9

*Damico v. Lulifama.com, LLC*,
2026 WL 850784 (N.D. Ill. Mar. 27, 2026) ...................................................................... 6, 8

*Dennis v. Whirlpool Corp.*,
2007 WL 9701826 (S.D. Fla. Mar. 13, 2007) ..................................................................... 20

*Dinerstein v. Google, LLC*,
73 F.4th 502 (7th Cir. 2023) ................................................................................................. 7

*Eike v. Allergan*,
850 F.3d 315 (7th Cir. 2017) ................................................................................................ 5

*Faycurry v. Inland Bank & Tr.*,
2018 IL App (1st) 171977-U ............................................................................................... 16

*Fullerton v. Corelle Brands, LLC*,
2019 WL 4750039 (N.D. Ill. Sept. 30, 2019) ..................................................................... 13

*Generations at Rock Island, LLC v. Illinois Dep't of Pub. Health*,
712 F. Supp. 3d 1071 (N.D. Ill. 2024) ................................................................................ 17

*Halim v. Buffalo Wild Wings, Inc.*,
2026 WL 444686 (N.D. Ill. Feb. 17, 2026) ......................................................................... 15

*Harris v. ChartOne*,
362 Ill. App. 3d 878 (2005) .................................................................................... 14

*Harris v. Rust-Oleum Corp.*,
2022 WL 952743 (N.D. Ill. Mar. 30, 2022)............................................................... 19

*Hirsch v. L'Oreal USA, Inc.*,
2025 WL 1540857 (N.D. Ill. May 29, 2025) .............................................................. 7

*HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*,
131 Ill. 2d 145 (1989) ...................................................................................... 13, 19

*In re Aqua Dots Prods. Liab. Litig.*,
270 F.R.D. 377 (N.D. Ill. 2010)............................................................................. 19

*In re Arthur J. Gallagher Data Breach Litig.*,
631 F. Supp. 3d 573 (N.D. Ill. 2022) ...................................................................... 13

*In re Recalled Abbott Infant Formula*,
97 F.4th 525 (7th Cir. 2024) .................................................................................... 6

*In re Sears, Roebuck & Co. Tools Mktg. & Sales Pracs. Litig.*,
2006 WL 3754823 (N.D. Ill. Dec. 18, 2006).............................................................. 9

*Int'l Paper Co. v. Androscoggin Energy LLC*, No. 00 C 6215,
2003 WL 21468623 (N.D. Ill. June 20, 2003)........................................................... 17

*Johnson v. Marshall Field & Co.*,
8 Ill. App. 3d 937 (1972) ................................................................................. 15, 16

*Johnson v. McCuskey*,
72 F. App'x 475 (7th Cir. 2003) ............................................................................ 16

*Jones v. BRG Sports, Inc.*,
2019 WL 3554374 (N.D. Ill. Aug. 1, 2019) ............................................................. 19

*Kaise v. Fleming*,
315 Ill. App. 3d 921 (2000) .................................................................................... 12

*Keck Garrett & Assocs., Inc. v. Nextel Comms., Inc.*,
517 F.3d 476 (7th Cir. 2008) .................................................................................. 16

*Lady Di's, Inc. v. Enhanced Servs. Billing, Inc.*,
654 F.3d 728 (7th Cir. 2011) .................................................................................. 14

*Learning Res., Inc. v. Trump*,
607 U.S. 229 (2026)................................................................................................. 4

*Levy v. W. Coast Life Ins. Co.*,
44 F.4th 621 (7th Cir. 2022) .......... 18

*Lincoln Nat'l Life Ins. Co. v. McClendon*,
230 F. Supp. 3d 1180 (C.D. Cal. 2017) .......... 9

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) .......... 7, 8

*Martis v. Grinnell Mut. Reinsurance Co.*,
388 Ill. App. 3d 1017 (2009) .......... 15

*Muehlbauer v. Gen. Motors Corp.*,
2009 WL 874511 (N.D. Ill. Mar. 31, 2009) .......... 19

*Nia v. Bank of Am., N.A.*,
725 F. Supp. 3d 1150 (S.D. Cal. 2024) .......... 11

*Olson v. Randstad HR Sols. of Delaware LLC*,
2025 WL 400728 (7th Cir. Feb. 5, 2025) .......... 12

*Oxford Media Grp., Inc. v. Fam. Worship Ctr. Church, Inc.*,
2017 WL 4164172 (N.D. Ill. Sept. 20, 2017) .......... 10, 13

*Randazzo v. Harris Bank Palatine*,
262 F.3d 663 (7th Cir. 2001) .......... 14

*Rokowsky v. Vericity, Inc.*,
632 F. Supp. 3d 797 (N.D. Ill. 2022) .......... 15

*Russell v. Walmart, Inc.*,
680 F. Supp. 3d 1130 (N.D. Cal. 2023) .......... 9

*Sevugan v. Direct Energy Servs.*,
931 F.3d 610 (7th Cir. 2019) .......... 9

*Simoni v. Hi-Tech Pharms., Inc.*,
2025 WL 2614685 (N.D. Ill. Sept. 10, 2025) .......... 6

*Siva v. Am. Bd. of Radiology*,
38 F.4th 569 (7th Cir. 2022) .......... 9

*Spokeo v. Robins*,
578 U.S. 330 (2016) .......... 5, 6

*Stefanski v. City of Chi.*,
2015 IL App (1st) 132844 .......... 15

*Trippe Mfg. Co. v. Am. Power Conversion Corp.*,
46 F.3d 624 (7th Cir. 1995) ........ 16

*Viper Tradeshow Transp., Inc. v. Am. Veterinary Med. Ass'n*,
2021 IL App (1st) 210008-U ........ 16

*W.E.B. Prod. & Fabricating, Inc. v. Ins. Co. of the W.*,
2024 WL 4723747 (N.D. Ill. Nov. 8, 2024) ........ 16

*Walker v. Cedar Fair, L.P.*,
2023 WL 4564390 (N.D. Ohio July 17, 2023) ........ 9

*Wertymer v. Walmart*,
142 F.4th 491 (7th Cir. 2025) ........ 9

*Zelikovsky v. Int'l Ass'n of Eating Disorder Professionals' Found., Inc.*,
2025 WL 3633604 (C.D. Ill. Dec. 15, 2025) ........ 17

**Statutes**

28 U.S.C. § 2201 ........ 16

50 U.S.C. § 1702(a)(3) ........ 11

U.S. Const. art. III ........ 5, 6, 7

**Rules**

Fed. R. Civ. P. 15(a) ........ 20

Fed. R. Civ. P. 23(a) ........ 19

Fed. R. Civ. P. 12(b)(1), (6) ........ 2, 5, 8, 10, 18

**Other Authorities**

RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT
(Am. L. Inst. 2011) ........ 14

Defendants Dyson, Inc. and Dyson Direct, Inc. (together, "Dyson") respectfully submit this memorandum of law in support of their motion to dismiss all causes of action asserted in the Consolidated Second Amended Class Action Complaint (ECF 27) (the "Complaint" or "Compl.") filed by plaintiffs Diana Hernandez and Amy Hunter (together, "Plaintiffs").[1]

## PRELIMINARY STATEMENT

Plaintiffs bring this putative class action against Dyson alleging that Dyson increased product prices to account for tariffs paid by Dyson to the federal government pursuant to the International Emergency Economic Powers Act ("IEEPA"). Plaintiffs allege that they voluntarily purchased Dyson products at the increased prices from third-party retailers. The U.S. Supreme Court having subsequently invalidated the IEEPA tariffs, Plaintiffs now assert that Dyson must pay to Plaintiffs any alleged "windfall profits" on the purchases of Plaintiffs' products resulting from IEEPA tariff refunds. Plaintiffs' claims fail at their premise.

The Complaint plausibly alleges neither an injury to Plaintiffs nor unjust conduct by Dyson. Plaintiffs admit that they voluntarily purchased Dyson products from third parties at disclosed prices and received the products they selected. Plaintiffs allege no defect, deception, compulsion, or promise of a future refund in connection with the purchases. They also allege no transaction-specific facts that, if true, would establish that Dyson increased the prices of Plaintiffs' products because of IEEPA tariffs, that third-party retailers passed any such increases through to Plaintiffs, that any portion of Plaintiffs' payments was passed-on to Dyson, or that any tariff refund paid to Dyson corresponds to amounts that Plaintiffs paid to retailers.

---

[1] Dyson reserves the right to further move to dismiss this matter on the basis of arbitration provisions and class action waivers in Dyson's Terms and Conditions that may have been accepted by Plaintiffs. Plaintiffs' complaint provides insufficient information to determine the applicability of these provisions.

As a result, the Complaint must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1). Plaintiffs fail to allege an injury-in-fact. In the Seventh Circuit, allegations that a plaintiff purchased a product of which their only complaint is that they purportedly should have paid less are insufficient to support a constitutional injury in the absence of any legal, regulatory, statutory or contractual obligation on the part of the manufacturer. Plaintiffs' alleged harms also are not traceable to Dyson. Plaintiffs' claims rest on a speculative chain of assumptions that Dyson (a) controlled third-party retailers' product pricing, (b) exercised that control to increase retailers' prices on products purchased by Plaintiffs, (c) did so to account for the cost of IEEPA tariffs and (d) that the third-party retailers share profits from the increased prices with Dyson.

The Complaint also must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). The Complaint fails to plausibly allege that Dyson obtained a benefit from Plaintiffs, or that the alleged benefit's retention would be inequitable or detrimental to Plaintiffs, particularly where Plaintiffs paid money to third parties and received exactly what they intended to purchase. In addition, Plaintiffs cannot proceed with a declaratory judgment claim that asks the Court to establish *Dyson's* rights and liabilities regarding Plaintiffs' alleged *past* harms.

Finally, if the Court does not dismiss Plaintiffs' Complaint in its entirety, the Court should strike the Complaint's class action allegations, which seek to aggregate claims governed by materially different laws across all fifty states, pursuant to Federal Rule of Civil Procedure 12(f).

## BACKGROUND

This section sets forth Plaintiffs' factual allegations in the Complaint and the sources cited to and incorporated therein, which Dyson accepts as true solely for the purposes of this Motion.

### I. Dyson Pays IEEPA Tariffs to the U.S. Government

Dyson is a multinational technology company that manufactures and sells premium consumer appliances like the "Supersonic Natural Hair Dryer" and the "Special Edition Airwrap i.d. Multi-Styler" identified in the Complaint. Compl. ¶ 19. In February 2025, the Trump Administration imposed tariffs on goods imported from most foreign countries pursuant to IEEPA. *Id.* ¶ 32. Importers of record were responsible for paying the IEEPA tariffs to U.S. Customs and Border Protection (the "CBP"). *Id.* ¶ 33. Between February 2025 and February 2026, Dyson allegedly paid IEEPA tariffs to CBP on products imported into the U.S. *Id.* ¶¶ 2–3, 5, 7–8, 33. Plaintiffs allege that Dyson, Inc. and Dyson Direct, Inc. were the importers of record. *Id.* ¶ 33.

### II. Dyson Allegedly Raises the Prices of Categories of Products Due to IEEPA Tariffs

Plaintiffs allege that "[d]uring the period the tariffs were effective, Dyson increased its prices on consumers." *Id.* ¶ 49. Plaintiffs allege that "[m]edia reports during the tariff period reflect that Dyson was increasing the prices due to the [IEEPA] tariffs," although of the three reports cited in the Complaint, only one is dated before February 2026. *Id.* ¶ 50, 50 n.6 (incorporating by reference three online articles). The only report dated before February 2026 states that, in July 2025, Dyson said in an email that "the cost to innovate our products will soon increase due to global economic conditions." *Id.* ¶ 50 n.6 (https://pricetimeline.com/news/121). As a result, starting July 25, 2025, "Dyson products across categories will see price increases in the US." *Id.* The email did not identify the "global economic conditions" impacting the cost to innovate products or the categories of products that would see price increases. *Id.* The email did not refer to IEEPA tariffs. *Id.* The email did not say whether retailers would increase retail prices

for Dyson products. *Id.* Plaintiffs do not identify a date when price increases allegedly went into effect, on what categories of products, which retailers implemented the higher prices, by how much the prices were increased, or whether the prices are still increased today.

## III. Plaintiffs Voluntarily Purchase Dyson Products from Third-Party Retailers

Plaintiffs allege that they each purchased Dyson products from third-party retailers subject to price increases. *See* Compl. ¶¶ 19–20. Plaintiff Hernandez alleges she purchased a "Dyson Supersonic Natural Hair Dryer" and a "Dyson Special Edition Airwrap i.d. Multi-Styler" on or about December 20, 2025, from Best Buy. *Id.* ¶ 19. Plaintiff Hunter alleges she purchased "goods" from an unidentified third-party retailer but does not state when she purchased the "goods." *Id.* ¶ 20. Plaintiffs do not allege the prices they paid for the products, the original prices, the amount of the price increases attributable to IEEPA tariffs, when the prices were increased, when the products were imported, from where the products were imported, when the products were purchased by the retailers, or on what basis Plaintiffs conclude that the retailers price the products at Dyson's direction or pay any profits obtained on price increases to Dyson. Plaintiffs do not allege that the retailers or Dyson misrepresented any aspect of the products or prices at the time of purchase.

## IV. The U.S. Supreme Court Invalidates IEEPA Tariffs, Entitling Importers But Not Consumers to Refunds

On February 20, 2026, the U.S. Supreme Court invalidated the IEEPA tariffs. *Id.* ¶ 36; *Learning Res., Inc. v. Trump*, 607 U.S. 229, 255 (2026). As a result, importers allegedly are eligible to receive refunds of IEEPA tariffs paid to CBP. Compl. ¶¶ 55, 58. However, Plaintiffs admit, neither the Supreme Court nor CBP "imposed any legal requirement[s] on businesses" to refund "consumers who may have paid higher prices" for products. *Id.* ¶¶ 9, 41. Plaintiffs do not allege that Dyson is subject to any legal, statutory, regulatory, or contractual obligation to refund consumers.

## ARGUMENT

The Complaint should be dismissed pursuant to both Rule 12(b)(1) and 12(b)(6) and, to the extent the Complaint is not dismissed in its entirety, the class definition should be stricken pursuant to Rule 12(f). It is not and has never been the law that lawful pricing becomes unlawful merely because a manufacturer recovers or reduces a cost component of production following sale.

### I. The Complaint Should Be Dismissed Pursuant to Rule 12(b)(1)

Plaintiffs' Complaint should be dismissed under Rule 12(b)(1) for two reasons. *First*, Plaintiffs suffered no cognizable injuries because they admit that they received the benefits of their bargains. *Second*, Plaintiffs fail to plausibly trace their alleged payment of increased prices to Dyson.

#### A. Plaintiffs Lack Standing Because They Fail to Allege an "Injury in Fact"

At the pleading stage, Plaintiffs "must clearly allege facts demonstrating" that they suffered an "injury in fact" resulting from Dyson's alleged wrongful conduct—that is, an "invasion of a legally protected interest" that is "(a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Spokeo v. Robins*, 578 U.S. 330, 338–39 (2016) (citation modified). Plaintiffs fail to meet this threshold burden for at least three reasons.

*First*, Plaintiffs fail to identify an "invasion of a legally protected interest." *Id*. at 339. To do so, a plaintiff must allege an actual injury caused "(physically, financially—whatever) by the defendant." *Eike v. Allergan*, 850 F.3d 315, 318 (7th Cir. 2017). As the Seventh Circuit has recognized, "[t]he fact that a seller does not sell [a] product . . . at the price you'd like to pay, is not an actionable injury" under Article III. *Id.*; U.S. Const. art. III. In *Eike*, the appeals court affirmed the dismissal of a claim that class members were overcharged for "unnecessarily large" eyedrops. The court reasoned that "[y]ou cannot sue a company and argue only—'it could do better by us.'" *Id*. at 316, 318. The same follows here. Plaintiffs complain that Dyson either could

have charged lower prices or should have paid consumers refunds for higher prices. But Plaintiffs' voluntary decision to pay disclosed prices for products that they received as-advertised, "is not an actionable injury; it is just a regret or disappointment." *Id.* at 318. Plaintiffs fail to cite any law, statute, regulation, contract or promise to the contrary that vests them with a protectable interest in paying a lower price for Dyson products at retail or obtaining refunds following sale—indeed, Plaintiffs acknowledge that neither the Supreme Court nor the CBP imposed any obligation on importers to refund consumers. Compl. ¶¶ 9, 41.

At bottom, consumer refunds based on potential future invalidation of tariffs paid by Dyson to the federal government were never a part of Plaintiffs' bargain with third-party retailers, and Plaintiffs do not and cannot plead otherwise (or explain why that would bind Dyson). Consequently, "there is no economic injury sufficient to confer standing." *In re Recalled Abbott Infant Formula*, 97 F.4th 525, 531 (7th Cir. 2024); *see Damico v. Lulifama.com, LLC*, 2026 WL 850784, at *3 (N.D. Ill. Mar. 27, 2026) ("Every day, shoppers . . . must decide for themselves whether they are getting value for their money. That is called choice. And if a buyer is not happy with their choice, they are not injured for Article III purposes because they received the benefit of their bargain."); *Simoni v. Hi-Tech Pharms., Inc.*, 2025 WL 2614685, at *3 (N.D. Ill. Sept. 10, 2025) (same).

*Second*, Plaintiffs have not alleged a "particularized" injury they suffered "in a personal and individual way." *Spokeo*, 578 U.S. at 339. In *In re Recalled Abbott Infant Formula*, the Seventh Circuit affirmed that plaintiffs lacked standing where they alleged that *some* of defendants' products were contaminated but did not allege that their individual products were contaminated or that the contamination "was sufficiently widespread so as to plausibly affect any given product," holding that "potential risk of contamination is not enough to confer standing." 97 F.4th at 530.

Here, Plaintiffs contend that prices for their products were increased as a result of IEEPA tariffs but fail to allege their purchase prices or the original prices for their products. Plaintiffs purchased their products from third parties but fail to plausibly allege that Dyson set or controlled those third parties' pricing. Plaintiffs allege that Dyson imports many of its products but fail to allege why they contend their products were imported during the short period when IEEPA tariffs were in effect. Instead, the Complaint relies entirely on speculation that (i) Dyson raised prices because of the IEEPA tariffs (*e.g.*, Compl. ¶ 49 ("During the period the tariffs were effective, Dyson increased its prices on consumers."); *id.* ¶ 43 (relying on unspecified "[e]conomic studies" not specific to Dyson to allege cost of tariffs is passed on to consumers)); and (ii) that Dyson increased prices on Plaintiffs' individual products (*id.* ¶ 19 ("[Plaintiff] paid higher prices as a result of the tariffs."); *id.* ¶ 31 ("Imported goods account for most, if not virtually all, of Dyson's retail sales in the United States.")). Like in *In re Recalled Abbott Infant Formula*, these allegations are insufficient to plead a particularized injury under Article III. *See, e.g.*, *Hirsch v. L'Oreal USA, Inc.*, 2025 WL 1540857, at *5 (N.D. Ill. May 29, 2025) (dismissing complaint where the plaintiff "fail[ed] to plausibly allege a particularized harm.").

*Finally*, Plaintiffs' alleged injury is hypothetical. To the extent Plaintiffs' injury depends on Dyson retaining alleged duplicative profits on the sale of Plaintiffs' products, the Complaint does not allege that Dyson has received any refund, much less a refund attributable to tariffs on the products Plaintiffs purchased. *See Dinerstein v. Google, LLC*, 73 F.4th 502, 514 (7th Cir. 2023) (allegation that personal data "may have" been shared was too hypothetical for standing).

### B. Plaintiffs Lack Standing Because Their Injuries Are Not Traceable to Dyson

Article III requires "a causal connection between the injury and the conduct complained of—the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court.'" *Lujan v. Defs.*

*of Wildlife*, 504 U.S. 555, 560 (1992). Here, Plaintiffs must plausibly allege that Dyson's conduct is the cause of the prices paid by each Plaintiff, rather than, for example, a third-party retailer's independent pricing decisions.

Plaintiffs admit that they purchased their products from third parties—not Dyson. Yet Plaintiffs fail to allege a plausible factual chain linking (1) an IEEPA tariff paid by Dyson on the products they purchased, to (2) a tariff-responsive increase in Dyson's price charged to retailers for those products, to (3) a corresponding increase in the prices charged by the retailers for those products, to (4) money paid by Plaintiffs to retailers for those products, to (5) money received by Dyson. The Complaint is bare of allegations concerning pricing control, contractual price direction, resale-price maintenance, mandated MSRP change, contemporaneous wholesale increase, or retailer "pass-through." In sum, Plaintiffs fail to trace their injuries to Dyson as opposed to the "independent action of some third party not before the court." *See Lujan*, 504 U.S. at 560.

Plaintiffs' alleged injury also is not traceable to Dyson's receipt of tariff refunds. *Learning Resources* was decided *after* Plaintiffs' purchases and cannot plausibly be alleged to have affected Plaintiffs' purchasing decisions. Plaintiffs do not allege that they would not have purchased their products if they had known that Dyson might one day receive tariff refunds—indeed, Plaintiffs do not allege that Dyson's payment of IEEPA tariffs, or the prices of their products, affected their decisions at all. Accordingly, the Complaint fails to trace Plaintiffs' alleged injuries to Dyson's conduct and the Complaint must be dismissed. *See Damico*, 2026 WL 850784, at *4.

## II. <u>Plaintiffs' Claims Should Be Dismissed Pursuant to Rule 12(b)(6)</u>

To survive under Rule 12(b)(6), a claim must be facially plausible—that is, it must raise a "reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint is not plausible if it is "speculative," as "where there is an

'obvious alternative explanation'" for the facts alleged, *Wertymer v. Walmart*, 142 F.4th 491, 497 (7th Cir. 2025), or the allegations rest on "mere labels and conclusions," *Sevugan v. Direct Energy Servs.*, 931 F.3d 610, 614 (7th Cir. 2019). "[A] formulaic recitation of a cause of action's elements will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, a plaintiff must plead "facts giving rise to a plausible inference that, after discovery, [s]he will be able to prove each element." *Siva v. Am. Bd. of Radiology*, 38 F.4th 569, 575 (7th Cir. 2022).

Under Illinois law,[2] to state a claim for unjust enrichment, a plaintiff must allege that the defendant: (1) "unjustly retained a benefit," (2) "to the plaintiff's detriment," and (3) "that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *In re Sears, Roebuck & Co. Tools Mktg. & Sales Pracs. Litig.*, 2006 WL 3754823, at *4 (N.D. Ill. Dec. 18, 2006).[3] Likewise, in order to state a cause of action under Illinois law for money wrongfully had and received, a plaintiff must allege that (1) a "defendant has received money" (2) "that in equity and good conscience belongs to the plaintiff." *Bueker v. Madison Cnty.*, 2016 IL App (5th) 150282, ¶ 53, 61 N.E.3d 237, 256.[4] For both of these claims, "[a] plaintiff must

---

[2] Plaintiffs do not plead which states' laws apply to their claims. Plaintiff Hernandez is a California resident, Plaintiff Hunter is an Ohio resident and the Dyson entities are incorporated in Illinois. Compl. ¶¶ 19–22. Plaintiffs do not allege where they purchased their products. For purposes of this motion, Dyson applies Illinois law to Plaintiffs' claims; however, the deficiencies set out herein are equally fatal whether the Court applies Illinois, California, or Ohio law. Dyson reserves the right to assert that another state's law applies to Plaintiffs' claims or the claims of any class members to the extent the Complaint survives.

[3] Ohio and California articulate the standard for unjust enrichment similarly. *See Clifton v. Johnson*, 2016 WL 7231124, at ¶ 14 (Ohio App. 4 Dist. Dec. 6, 2016) ("Unjust enrichment occurs when a party retains money or benefits which in justice and equity belong to another.") (citation omitted); *Russell v. Walmart, Inc.*, 680 F. Supp. 3d 1130, 1133 (N.D. Cal. 2023) ("To allege unjust enrichment as an independent cause of action, a plaintiff must show that a defendant received and unjustly retained a benefit at the plaintiff's expense.").

[4] Ohio law does not distinguish between claims for unjust enrichment and money had or received. *See Walker v. Cedar Fair, L.P.*, 2023 WL 4564390, at *6 (N.D. Ohio July 17, 2023) (finding no distinction between claims for money had and received and unjust enrichment). California requires the money to have been paid to defendant for *plaintiff's use*. *See Lincoln Nat'l Life Ins. Co. v. McClendon*, 230 F. Supp. 3d 1180, 1190 (C.D. Cal. 2017) (elements of money had and received are: "(1) defendant received money; (2) the money defendant received was for plaintiff's use; and (3) defendant is indebted to plaintiff"). Thus, if

plausibly allege that the defendant received money that in equity and good conscience belongs to the plaintiff" in order to survive a challenge to the pleadings. *Oxford Media Grp., Inc. v. Fam. Worship Ctr. Church, Inc.*, 2017 WL 4164172, at *6 (N.D. Ill. Sept. 20, 2017) (citation omitted).

Plaintiffs' claims fail pursuant to Rule 12(b)(6) for at least four reasons, all of which are independently fatal. *First*, Plaintiffs fail to plausibly allege that the prices paid by Plaintiffs to third-party retailers were raised by Dyson due to IEEPA tariffs. *Second*, Plaintiffs fail to allege that *Dyson* received any benefit from Plaintiffs. *Third*, Plaintiffs fail to allege that Dyson engaged in any inequitable or unjust conduct, particularly where Plaintiffs voluntarily paid a known price for their products. *Finally*, Plaintiffs' claims cannot be maintained in equity where a contract governs their purchases. In addition, Plaintiffs' claim under the Declaratory Judgment Act should be dismissed because Plaintiffs seek judgments concerning *past* harms and *Dyson's* rights and liabilities—not Plaintiffs'.

### A. Plaintiffs Fail to Plausibly Allege Their Key Claim: That Dyson Raised the Prices Paid by Plaintiffs Due to IEEPA Tariffs

The fundamental theory underlying Plaintiffs' equitable claims is that Dyson increased the prices paid by Plaintiffs directly in response to IEEPA tariffs such that receiving a refund of those tariffs would be unjust if not passed on to consumers. *See* Compl. ¶¶ 10–14. To support this theory, Plaintiffs must plausibly allege (*inter alia*) that: (i) *Dyson* increased the prices paid by Plaintiffs for the products Plaintiffs purchased, and (ii) any such price increases were caused by invalidated tariffs. *See id.* ¶¶ 59–60. They have done neither.

California law applies to Plaintiffs' claims, then their claims for money had or received must be dismissed for the additional reason that the Complaint fails to allege that the purchase prices paid for Plaintiffs' products were somehow paid for Plaintiffs' use.

Plaintiffs allege in broad terms that Dyson "passed through" IEEPA tariffs to consumers, "relied upon" the tariffs to "impose charges on Plaintiffs," or "increas[ed] the prices due to the tariffs."[5] *Id.* ¶¶ 40, 50, 58. Absent from the Complaint is any allegation whatsoever as to what Plaintiffs paid, what the original price was, or by how much the price supposedly increased. Instead, the Complaint leans on the generic economic environment—that tariffs are "largely borne by domestic consumers" and that surveys of unnamed businesses showed that "a large majority of firms" passed through "at least some portion" of tariff costs—and then assumes that Dyson did the same. *See id.* ¶¶ 42–43.

In a misguided attempt to tie the prices Plaintiffs paid to Dyson's payment of IEEPA tariffs, Plaintiffs rely on online articles that concern: (i) IEEPA tariffs' general effect on consumer prices; (ii) lawsuits filed by companies, allegedly including Dyson, against CBP for the repayment of IEEPA tariffs; (iii) a news article claiming without explanation that Dyson increased its prices due to the IEEPA tariffs; and (iv) two websites that quote a statement allegedly made by Dyson to consumers on July 25, 2025, that, beginning that day, and "over the next few months," Dyson would be raising prices on "categories" of products due to "global economic conditions." *See* Compl. ¶ 50 n.6, ¶ 55 n.7. These allegations are not nearly enough to plausibly tie the unspecified prices that each Plaintiff paid to a third-party retailer to a tariff-related price increase imposed by Dyson. Assuming that Plaintiffs paid increased prices at all, there are myriad factors discussed by Plaintiffs' cited articles that can affect a product's price, including increased spending in research

[5] To the extent the Court finds that Plaintiffs have plausibly alleged that Dyson charged Plaintiffs amounts corresponding to IEEPA tariffs paid on their products, Dyson's alleged conduct is protected pursuant to 50 U.S.C. § 1702(a)(3) ("No person shall be held liable in any court for or with respect to anything done or omitted in good faith in connection with the administration of, or pursuant to and in reliance on, this chapter, or any regulation, instruction, or direction issued under this chapter."); *Nia v. Bank of Am., N.A.*, 725 F. Supp. 3d 1150, 1166 (S.D. Cal. 2024) (applying the IEEPA shield to bar a private party's state law claims), *aff'd*, 172 F.4th 1065 (9th Cir. 2026).

and development, lower sales, job cuts, changes in U.S. dollar and other currency exchange rates, and other individual and global economic factors. Each of these, or some combination of them, provides "obvious alternative explanation[s]" for any price increases on Dyson's products. *See Olson v. Randstad HR Sols. of Delaware LLC*, 2025 WL 400728, at *3 (7th Cir. Feb. 5, 2025) (citation omitted).

Because Plaintiffs fail to plausibly allege that Dyson raised prices on the products they purchased from third-party retailers, let alone that those increases were attributable to tariffs rather than ordinary market forces, the Complaint fails to satisfy basic pleading requirements.

### B. Plaintiffs Fail to Plausibly Allege That Dyson Received a Benefit From Plaintiffs

To state a claim for unjust enrichment, Plaintiffs must plausibly allege that they provided a benefit *to Dyson*. Likewise, to state a claim for money had and received, Plaintiffs must plausibly allege that Dyson received money "which in equity and good conscience belongs to the plaintiff." *Kaise v. Fleming*, 315 Ill. App. 3d 921, 925 (2000). Plaintiffs fail to do so.

Plaintiffs admit that they paid third-party retailers for their products, not Dyson. Compl. ¶¶ 19–20. Plaintiffs do not allege that they paid any money to Dyson. Plaintiffs also cannot point to any identifiable portion of the money Plaintiffs paid to third-party retailers that was transmitted to Dyson. This fatal deficiency is not merely that retailers stood between Plaintiffs and Dyson, but that Plaintiffs do not explain how their retail payments produced *any* corresponding benefit to Dyson at all.

Nor do Plaintiffs allege the facts necessary to connect their retail payments to Dyson's alleged tariff costs. The Complaint does not allege when the retailers acquired Plaintiffs' products, what the retailers paid Dyson for them, whether Dyson increased the retailers' acquisition costs because of IEEPA tariffs, whether the retailers passed any such increase through to Plaintiffs, when

they increased prices and whether the retailers instead retained any difference between their acquisition costs and the retail prices Plaintiffs paid. Without these allegations, the assertion that Dyson obtained the alleged tariff-related portion of Plaintiffs' payments rests on speculation rather than a plausibly pleaded economic connection. It is equally plausible on Plaintiffs' allegations that the products purchased by Plaintiffs were sold wholesale by Dyson to retailers before any tariff-responsive price increase, and that Dyson received no benefit from the products' ultimate sale to Plaintiffs.

Finally, to the extent Plaintiffs claim that the benefit received by Dyson is the alleged tariff refund, a government refund of money paid by Dyson to import products *prior to sale* cannot plausibly be alleged to have been a benefit conferred by Plaintiffs or retained by Dyson to Plaintiffs' detriment. Plaintiffs do not allege that they paid the IEEPA tariffs to CBP or that Dyson received Plaintiffs' money for the purpose of remitting tariffs expressly on Plaintiffs' behalf.

Accordingly, Dyson is not plausibly alleged to have received any money or other benefit from Plaintiffs and thus was not "enriched" by Plaintiffs as a matter of law. *See HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 131 Ill. 2d 145, 160–61 (1989); *see also In re Arthur J. Gallagher Data Breach Litig.*, 631 F. Supp. 3d 573, 592 (N.D. Ill. 2022) (dismissing unjust enrichment claim where the complaint suggested, "[i]f anything," that third parties benefited from alleged harm to the plaintiffs).[6]

[6] Ohio law mandates this outcome. *Fullerton v. Corelle Brands, LLC*, 2019 WL 4750039, at *14 (N.D. Ill. Sept. 30, 2019) ("Ohio courts, therefore, dismiss unjust enrichment claims when the plaintiff did not directly purchase the goods or services from the defendant.").

### C. Plaintiffs Fail to Plausibly Allege Inequity to Their Detriment

Plaintiffs fail to plausibly allege any inequity in the purchase transaction, as required to pursue causes of action for unjust enrichment and money had and received. *Oxford Media Grp., Inc.*, 2017 WL 4164172, at *6.

Plaintiffs allege that they voluntarily paid for their products. In other words, Plaintiffs made independent value judgments that the products were worth the purchase prices. Plaintiffs do not allege that the products failed to meet their expectations or that they were compelled to make the purchases. Regardless of how the retailer priced the products and whether the prices were increased and on what basis, Plaintiffs' admission that they made an informed, voluntary decision that the products were worth the purchase prices must defeat Plaintiffs' assertion of inequity. *See Blitz v. Monsanto Co.*, 317 F. Supp. 3d 1042, 1056 (W.D. Wis. 2018) (the "bald assertion" that "defendant has been unjustly enriched" is insufficient to state a claim under federal pleading standards) (cleaned up); *see Lady Di's, Inc. v. Enhanced Servs. Billing, Inc.*, 654 F.3d 728, 736 (7th Cir. 2011) ("There is simply nothing inequitable or unjust about the plaintiff paying for services it ordered and received."). This result is consistent with the "voluntary payment rule" as applied in the Seventh Circuit. The "voluntary payment rule" holds that plaintiffs may not recover in equity what they voluntarily paid with full knowledge of the facts. *Randazzo v. Harris Bank Palatine*, 262 F.3d 663, 667 (7th Cir. 2001) (under Illinois law a "person who voluntarily pays another with full knowledge of the facts will not be entitled to restitution" absent fraud or mistake); *see Harris v. ChartOne*, 362 Ill. App. 3d 878, 881–82 (2005) ("There is no question from the pleadings that the plaintiffs allege they paid the invoices without protest."); RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT § 6, cmt. e (Am. L. Inst. 2011) (noting that "money voluntarily paid in the face of a recognized uncertainty as to the existence or extent of the payor's obligation to the recipient may not be recovered, on the ground of 'mistake,' merely because the

payment is subsequently revealed to have exceeded the true amount of the underlying obligation") (emphasis omitted).

Plaintiffs also fail to plausibly allege inequity in Dyson's purported decision not to refund consumers. Plaintiffs allege that it is inequitable for Dyson to "reap [IEEPA] tariff payments twice—once in the form of pass-through costs imposed on consumers like Plaintiffs, and then again from the federal government." Compl. ¶¶ 13–14. But Plaintiffs fail to identify any obligation on the part of premium appliance manufacturers to refund consumers when they allegedly receive unexpected profits on retailers' sales. In fact, Plaintiffs affirmatively allege that CBP has *not* required businesses to refund amounts to consumers and Dyson has *not* represented to consumers that it would issue refunds, (Compl. ¶ 9) and Plaintiff Hernandez has admitted that Dyson "has made no legally-binding commitment to return IEEPA tariffs" whatsoever. *See* Class Action Complaint ¶ 8 (ECF 1). Under these circumstances, Plaintiffs cannot plausibly establish that retention of alleged "windfall profits" would be inequitable and, therefore, cannot proceed with claims for unjust enrichment or money had and received. *See Rokowsky v. Vericity, Inc.*, 632 F. Supp. 3d 797, 811 (N.D. Ill. 2022) (dismissing unjust enrichment claim based on defendant's alleged failure to give plaintiff the statutory maximum amount of shares in a demutualization as plaintiff "has not set forth any facts plausibly suggesting that *any* Defendant accepted a benefit that must be returned to [plaintiff] under principles of equity"); *see Martis v. Grinnell Mut. Reinsurance Co.*, 388 Ill. App. 3d 1017, 1024 (2009) ("Unjust enrichment is not a separate cause of action that, standing alone, will justify an action for recovery"; it is merely a remedy for "unlawful or improper conduct as defined by law."); *Halim v. Buffalo Wild Wings, Inc.*, 2026 WL 444686, at *4 (N.D. Ill. Feb. 17, 2026) ("Because Halim has not pled facts supporting his claim that BWW made any deceptive statements, he has failed to state a claim for unjust enrichment.").

### D. A Claim in Quasi-Contract Cannot Be Maintained Where a Contract Governs the Alleged Unlawful Transaction

Plaintiffs' equitable claims also fail because the complained-of transaction is subject to agreements between Plaintiffs and the third-party retailers who sold them the products. A remedy in quasi-contract "is not available when an express contract exists concerning the same subject matter." *Stefanski v. City of Chi.*, 2015 IL App (1st) 132844, ¶ 19 (citation omitted); *Viper Tradeshow Transp., Inc. v. Am. Veterinary Med. Ass'n*, 2021 IL App (1st) 210008-U, ¶¶ 19–20. Plaintiffs' transactions with the third-party retailers created contracts between them. *Johnson v. Marshall Field & Co.*, 8 Ill. App. 3d 937, 942 (1972) ("[I]t is elementary that a purchase and sale of goods is a contract . . . ."), *aff'd*, 57 Ill. 2d 272 (1974). There can be no unjust enrichment or money had and received claims under Illinois law where there is an enforceable contract governing the underlying transaction. *Faycurry v. Inland Bank & Tr.*, 2018 IL App (1st) 171977-U, ¶ 37 (a party cannot state a claim for unjust enrichment where an express contract exists concerning the same subject matter); *Keck Garrett & Assocs., Inc. v. Nextel Comms., Inc.*, 517 F.3d 476, 487 (7th Cir. 2008) ("Illinois law does not permit a party to recover on a theory of quasi-contract when an actual contract governs the parties' relations on that issue."). Plaintiffs' remedy, if any, is in contract. Plaintiffs cannot recast the economics of completed retail contracts as a quasi-contractual entitlement against a nonparty manufacturer, particularly absent plausible allegations connecting the manufacturer to the payment or showing why the retail contract does not govern the consideration paid for the products.

### E. Plaintiffs Fail to Plausibly Allege a Justiciable Controversy

"The Declaratory Judgment Act, 28 U.S.C. § 2201, allows federal courts, in their discretion, to render declaratory judgments only where there exists an actual controversy: The latter requirement is a jurisdictional prerequisite of constitutional dimensions." *Trippe Mfg. Co. v. Am.*

*Power Conversion Corp.*, 46 F.3d 624, 627 (7th Cir. 1995). Specifically, "[t]he defendant must have engaged in conduct giving rise to a reasonable apprehension on plaintiff's part that it will face . . . suit or the threat of one if it commences or continues the activity in question." *Id.* And, "[a]s the Seventh Circuit has explained, '[d]eclaratory judgments are not meant to simply proclaim that one party is liable to another.'" *W.E.B. Prod. & Fabricating, Inc. v. Ins. Co. of the W.*, 2024 WL 4723747, at *5 (N.D. Ill. Nov. 8, 2024) (quoting *Johnson v. McCuskey*, 72 F. App'x 475, 478 (7th Cir. 2003)). Plaintiffs' declaratory judgment claim must be dismissed for three reasons.

*First*, Plaintiffs impermissibly request a declaratory judgment that establishes Dyson's rights and liabilities as to past alleged harm. Plaintiffs request the Court enter a declaratory judgment that (i) Dyson's conduct "was uniform in increasing prices at least in part due to IEEPA tariffs," (ii) Plaintiffs "rightfully own the tariff-related surcharges imposed" by Dyson, and (iii) "Plaintiffs suffered an injury by having been required to pay Defendants a tariff surcharge." Compl. ¶ 112. Plaintiffs do not allege any ongoing or imminent conduct that declaratory relief would govern. The alleged purchases are complete, the prices were knowingly paid, and Plaintiffs seek a determination that portions of their payments purportedly belong to them. Plaintiffs do not allege that they intend to purchase Dyson products again, that Dyson is currently imposing an identifiable IEEPA-related surcharge, or that Plaintiffs face any imminent repetition of the alleged injury. A declaration concerning completed transactions would neither guide the parties' future conduct nor prevent an impending injury. That is not the function of relief under the Declaratory Judgment Act. *See Zelikovsky v. Int'l Ass'n of Eating Disorder Professionals' Found., Inc.*, 2025 WL 3633604, at *13 (C.D. Ill. Dec. 15, 2025) ("[R]elief under the DJA is primarily concerned with addressing ongoing or impending harm."); *Generations at Rock Island, LLC v. Illinois Dep't of Pub. Health*, 712 F. Supp. 3d 1071, 1077 (N.D. Ill. 2024) (dismissing declaratory judgment claim

where harm had already occurred and chance of it happening again at a future time was "at best, speculative"). Plaintiffs likewise request the Court enter a declaratory judgment that Dyson should repay Plaintiffs a portion of the price paid for their products, seeking an impermissible judgment as to *Dyson*'s rights regarding money allegedly already paid to it, and for an overpayment they claim has already occurred. Compl. ¶¶ 112–13; *see, e.g.*, *Int'l Paper Co. v. Androscoggin Energy LLC*, No. 00 C 6215, 2003 WL 21468623, at *3 (N.D. Ill. June 20, 2003) ("AELLC, however, cannot bring a declaratory judgment suit on behalf of its adversary.").

*Second*, Plaintiffs request the Court issue a declaratory judgment that "[a]ny contract, agreement or other arrangement that permitted [Dyson] to collect funds from Plaintiff and Class Members for IEEPA tariff related charges is rescinded and void *ab initio*." Compl. ¶ 112. Yet Plaintiffs admit in the Complaint that they purchased their products from third parties. Having failed to plead a contract between Plaintiffs and Dyson, this claim must be dismissed.

*Third*, the declaratory judgment claim serves no purpose independent of Plaintiffs' claims for equitable relief. The declarations Plaintiffs seek merely ask the Court to decide the factual and legal predicates of Plaintiffs' unjust enrichment and money had and received claims. Compl. ¶ 112. The Declaratory Judgment Act does not provide a vehicle to obtain an advisory restatement of issues that would necessarily be resolved in adjudicating the parties' dispute. Where a requested declaration would add nothing to the resolution of the plaintiff's substantive claims, dismissal is appropriate. *Levy v. W. Coast Life Ins. Co.*, 44 F.4th 621, 629 (7th Cir. 2022) ("Since the [plaintiffs'] breach-of-contract and declaratory-judgment claims were substantively identical, we find no abuse of discretion in the court's decision to dismiss the latter as duplicative"; affirming dismissal of complaint in its entirety pursuant to Rule 12(b)(6)).

## III. **In the Alternative, the Court Should Strike Plaintiffs' Class Allegations Pursuant to Rule 12(f)**

In the event the Court does not dismiss the Complaint in full, the Court should strike the Complaint's class allegations. Courts evaluate motions to strike class allegations pursuant to Federal Rule of Civil Procedure 23, scrutinizing "[i]f the plaintiff's class allegations are facially and inherently deficient" and can strike class allegations at the pleading stage. *Buonomo v. Optimum Outcomes, Inc.*, 301 F.R.D. 292, 295 (N.D. Ill. 2014). In doing so, courts look at whether the complaint on its face meets the requirements of Federal Rule of Civil Procedure 23(a), namely "numerosity, commonality, typicality, and adequacy of representation." *Id.*

The Complaint defines the putative "Nationwide Class" as "[a]ll customers who purchased goods from Dyson or a retailer selling Dyson products during the period in which Dyson's prices were inflated at least in part due to the tariffs." Compl. ¶ 68. This class definition should be stricken because it attempts to plead a nationwide class for unjust enrichment and money had and received claims.

Courts in this district have declined to certify nationwide or multi-state classes for unjust enrichment claims as "the individual states' laws regarding unjust enrichment are too nuanced to lend themselves to class treatment." *Muehlbauer v. Gen. Motors Corp.*, 2009 WL 874511, at *5 (N.D. Ill. Mar. 31, 2009);[7] *see also In re Aqua Dots Prods. Liab. Litig.*, 270 F.R.D. 377, 386 (N.D. Ill. 2010) (holding "the law of unjust enrichment varies too much from state to state to be amenable to national or even to multistate class treatment" and analyzing the substantial variations between different states' unjust enrichment doctrines). As just one example, "Texas requires wrongful

---

[7] As unjust enrichment principles underlie claims of money had and received, the same principles and variations in states' laws apply to claims for money had and received as well. *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 131 Ill. 2d 145, 160 (1989) ("The doctrine of unjust enrichment underlies a number of legal and equitable actions and remedies, including the equitable remedy of constructive trust and the legal actions of *assumpsit* and restitution or quasi-contract.").

conduct by the defendant, whereas Arkansas does not." *Id.* at 387. There are also substantial variations in whether a state requires a showing that there is no adequate remedy at law. *Id.* at 386–87. Several courts in this district have granted motions to strike class allegations on this exact basis. *See Harris v. Rust-Oleum Corp.*, 2022 WL 952743, at *5 (N.D. Ill. Mar. 30, 2022) ("[S]everal courts in this District have found class treatment of unjust enrichment claims unsupportable at the pleading stage.") (collecting cases); *Jones v. BRG Sports, Inc.*, 2019 WL 3554374, at *7 (N.D. Ill. Aug. 1, 2019) ("[C]ourts have emphasized that the class action device is ill suited for disputes that call for the application of multiple states' laws to a single class's claims."); *see also Dennis v. Whirlpool Corp.*, 2007 WL 9701826, at *4 (S.D. Fla. Mar. 13, 2007) (granting motion to strike as "negligence, unjust enrichment and 'money had and received' claims also cannot be certified as a matter of law"). Accordingly, should the Court deny Dyson's request to dismiss the Complaint in its entirety, the class action allegations should be stricken pursuant to Federal Rules of Civil Procedure 12(f) and 23.

## CONCLUSION

Dismissal with prejudice is warranted here. While courts freely grant parties leave to amend the pleadings when justice so requires, they should deny leave to amend when amendment would be futile. Fed. R. Civ. P. 15(a). Here, amendment would be futile because Plaintiffs admit that they received the benefits of their bargains and that Dyson has no legal obligation to pay tariff refunds to consumers, and Plaintiffs utterly fail to establish a causal link between their alleged injuries and any conduct by Dyson.

Pursuant to the Court's Case Procedures, Dyson's counsel has confirmed that Plaintiffs object to the relief requested in this motion. Counsel have agreed to the briefing schedule set forth in the proposed order accompanying this motion.

Dated: October 7, 2026

Respectfully submitted,

HERBERT SMITH FREEHILLS KRAMER (US) LLP

/s/ *Maxwell D. Herman*
Maxwell D. Herman
1177 Avenue of the Americas
New York, NY 10036
Telephone: (917) 542-7848
Fax: (917) 542-7601
Email: Maxwell.Herman@hsfkramer.com

PLUNKETT COONEY PC

John F. Sullivan
Amanda Nichole Hart
221 N. LaSalle Street, Suite 3500
Chicago, Illinois 60601
Telephone: (312) 970-3491
Email: jsullivan@plunkettcooney.com
ahart@plunkettcooney.com

*Attorneys for Dyson, Inc. and Dyson Direct, Inc.*